**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NOREEN C. LANAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 11723 |
| | ) | |
| COUNTY OF COOK d/b/a COOK | ) | Judge John J. Tharp, Jr. |
| COUNTY HEALTH AND HOSPITAL | ) | |
| SYSTEM, PATRICK BLANCHARD, | ) | |
| JOHN JAY SHANNON, GLADYS | ) | |
| LOPEZ, DOUGLAS ELWELL, EULA | ) | |
| CISCO, EKERETE AKPAN, | ) | |
| DEBORAH COHEN, and ANDREW | ) | |
| JESTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Noreen Lanahan brought this action against her employer Cook County, and several County employees, including employees of the Office of the Independent Inspector General ("OIIG"). At the time, Ms. Lanahan was an employee of the Cook County Health and Hospital System ("CCHHS"). She alleges that the County underpaid her because she is a woman and that the County and its employees retaliated against her after she raised concerns that her pay may be the result of sex and political discrimination. At the motion to dismiss stage, this Court dismissed some of her claims. Ms. Lanahan moved for partial summary judgment on her pay discrimination claims; Defendants Cook County, John Jay Shannon, Gladys Lopez, Douglas Elwell, Eula Cisco, and Ekerete Akpan (collectively "the County Defendants") moved for summary judgment on all of the remaining claims against them; and Defendants Patrick Blanchard, Andrew Jester, and Deborah Cohen (collectively "the OIIG Defendants") moved for summary judgment on Ms. Lanahan's First Amendment retaliation claim, the sole remaining claim against them. For the

reasons set forth below, Ms. Lanahan's motion for partial summary judgment [131] is denied, the County Defendants' motion for summary judgment [133] is granted, and the OIIG Defendants' motion for summary judgment [136] is granted.

## BACKGROUND

### I.     The *Shakman* Consent Decree

Noreen Lanahan is a former Cook County employee, and she alleges (among other claims) that the County and its employees retaliated against her for pursuing claims of political discrimination before the OIIG and an arbitrator. As a result, the Court briefly explains the 1972 consent decree in *Shakman v. Democratic Organization of Cook County*, No. 69 C 02145, that prohibits political discrimination in the County's employment practices. *O'Sullivan v. City of Chi.*, 396 F.3d 843, 848 (7th Cir. 2005) (explaining the 1972 consent decree). The *Shakman* Court also entered a Supplemental Relief Order ("SRO") that provides a process for investigating and adjudicating claims of political discrimination. SRO, SOF[1], Ex. 15, ECF No. 137-16. The SRO requires that the Inspector General—the OIIG—investigate claims arising after February 2, 2007. The OIIG must issue findings on claims to the *Shakman* Compliance Administrator and others. The SRO gives claimants the option of a settlement conference with the County and binding arbitration should a settlement conference prove unsuccessful.

### II.    Factual Background

Ms. Lanahan worked for CCHHS from 1995 until she retired in 2017. She started as a Grade 21 employee and received a salary of $63,525.28. During the period in which the County classified her as a Grade 21 employee, Ms. Lanahan received various step increases, annual raises, and contract increases. As of June 8, 2008, she received a salary of $82,014.40, her last salary as

---

[1] The Court refers to the parties' agreed statement of material facts as "SOF" throughout.

a Grade 21 employee. On August 31, 2008, she was promoted to Director of Financial Control IV and Chief Financial Officer for the Department of Public Health, a Grade 24 position. In that role, Ms. Lanahan supervised nine employees who reported to her. She was responsible for "general accounting for 32 business units, including Women Infant and Children Grant Food Programs (WIC) of $12 million, and the Illinois Department of Public Health in the amount of $2 million"; coordinating purchasing for those business units; "coordination with the Cook County Budget and Management Office and the Cook County Comptroller"; "financial and program audits"; and "manag[ing] more than 30 grants." SRO Compl. Aff. ¶ 18, SOF, Ex. 7, ECF No. 137-8.

Along with the promotion, Ms. Lanahan received a salary increase to $101,000. Ms. Lanahan never received another salary increase. Her salary remained at $101,000 until she retired in 2017. CCHHS did not have a salary plan for Grade 24 employees. Other Grade 24 employees nevertheless received salary increases. Ms. Lanahan was the only Grade 24 employee who did not receive a salary increase from 2008 to 2017.

From 2008 to 2014, Ms. Lanahan raised concerns regarding her compensation with her supervisors and management without any success. In 2013, Ms. Lanahan learned that one of the employees she supervised, Chris Soriano, received a higher salary than she did.[2] She began supervising Mr. Soriano in 2009. During the period when Ms. Lanahan supervised him, Mr. Soriano was a Grade 23 employee working as a Director of Financial Control III. Mr. Soriano's salary was progressively adjusted above Ms. Lanahan's salary between 2008 and 2016.[3]

---

[2] The parties say in their SOF that Ms. Lanahan learned about the discrepancy in 2009, but she testified at her deposition that she learned of it in 2013. Pl.'s Dep. 236:19-24–237:1-10, SOF, Ex. 1, ECF No. 137-2.

[3] The parties have adduced no other evidence of Mr. Soriano's salary during this period.

In August 2014, Ms. Lanahan raised her compensation issues with the CCHHS Chief of Human Resources, Gladys Lopez, and a Human Resources staff member, Jennifer Purcell. Ms. Lanahan also met with CCHHS Manager of Human Resources Eula Cisco on September 12, 2014. Ms. Cisco told Ms. Lanahan that only the President of the Cook County Board of Commissioners had discretion over salaries for Grade 24 employees. Ms. Cisco also told Ms. Lanahan that her only recourse was to file a claim under *Shakman*. In October 2014, Ms. Lanahan also met with CCHHS Deputy Chief Executive Officer Douglas Elwell regarding her concerns about her compensation.

On October 22, 2014, Ms. Lanahan learned that another Director of Financial Control IV and Grade 24 employee, Robert Vais, had a substantially higher salary of $138,300. Cook County hired Mr. Vais on August 2, 1982, as a Grade 23 employee. He received a starting salary of $73,101.60, and his salary increased over the years until he made $91,022.88 as a Grade 23 employee. When he was promoted to Grade 24 in June 2007, he received a salary of $96,000. From August 16, 2009, through at least July 27, 2014, his salary was $138,300. Although Mr. Vais had the same job title (Director of Financial Control IV) as Ms. Lanahan, the parties agree that he had a different job; Mr. Vais prepared the Medicare and Medicaid cost reports for CCHHS and never worked for the Department of Public Health. Both Mr. Vais and Ms. Lanahan were Career Service employees, which meant that the County could only fire them for "Good Cause"[4] and their positions should have had salary schedules. Mr. Vais retired in 2015.

---

[4] In the proposed amendment to the severance policy, the County defined "Good Cause" as "willful, material, or irreparable breach" of an employee's duties; gross negligence; "willful dishonesty, fraud, or misconduct"; "indictment for, conviction of, or guilty plea to a felony crime involving violence, dishonesty or moral turpitude"; and "a confirmed positive illegal drug test result." Proposed Amend. to Severance Policy 1, SOF, Ex. 13, ECF No. 137-14.

By October 22, 2014, Ms. Lanahan learned that her position, Director of Financial Control IV for the Cook County Department of Public Health, had been included in a proposed amendment to CCHHS's severance policy. Under the severance policy, eligible employees were paid a severance payment in exchange for agreeing to release the County, CCHHS, and its employees from liability if their employment was terminated. On October 3, 2014, the Human Resources Committee of the Board of Directors of CCHHS published in its meeting minutes a proposed amendment to CCHHS's severance policy that would change the scope of the policy. The proposed amendment to the policy stated that it "will apply to Eligible Employees whose employment with CCHHS is involuntarily terminated for a reason other than for Good Cause" and that "'Eligible Employee' shall mean the employee in one of the positions identified in the Scope section of this Severance Policy as being covered by the Policy." Proposed Amend. 1. The proposed amendment would have removed some positions from the scope of the policy and added others, including Ms. Lanahan's position. The Human Resources Committee's meeting minutes reflect that the amendment would not apply to "individuals who were employed by the System prior to July of 2010, [and] they would maintain career service." Meeting Minutes 2, SOF, Ex. 13, ECF No. 137-14. The notes also state that a Board Director "clarified that, if a person's title is listed . . . and they are career service, this does not really apply to that person." *Id.*

Nevertheless, when Ms. Lanahan learned that her position had been included on the new list, she emailed Mr. Elwell on October 23, 2014, to express her concern. At first, Mr. Elwell said that he thought her position "was always on the list" but said he would investigate the issue. SOF, Ex. 14 at 8, ECF No. 137-15. On October 28, 2014, Mr. Elwell stated in an email that CCHHS was "trying to line up like positions from an earlier policy as I understand it. From your perspective

as I understand it, inclusion on this list has no impact." *Id.* at 12. In her response to his email the next day, however, Ms. Lanahan requested that CCHHS take her job title off the list.

Ms. Lanahan also reached out to the *Shakman* Compliance Administrator, Mary Robinson, in the fall of 2014. Deborah Cohen, an OIIG investigator, took notes on Ms. Lanahan's initial contact with the OIIG; she also created typed reports on her investigation. On December 16, 2014, Ms. Lanahan filed a formal SRO complaint of political discrimination with the OIIG. In her SRO complaint, she alleged that "politically protected supervisors" required her to take on additional work, that she received a lower salary than some Grade 23 employees and Mr. Vais, and that her career service status was revoked by the severance policy. SRO Compl. Aff. ¶¶ 6, 8, 9. The OIIG concluded that Ms. Lanahan's pay claims were untimely and that the severance policy did not apply to her or alter her terms of employment.

Ms. Lanahan brought her political discrimination claims to an arbitration pursuant to the procedure in the SRO; in the spring of 2016, she appeared at hearings before an arbitrator. The arbitrator denied her request for relief on September 16, 2016. Ms. Lanahan then filed a motion in the *Shakman* litigation to vacate the arbitrator's decision; on March 9, 2017, the *Shakman* Court denied that motion. *Shakman v. Democratic Org. of Cook Cnty.*, No. 69 C 2145, 2017 WL 962762, at *5 (N.D. Ill. Mar. 9, 2017). Ms. Lanahan also filed a Rule to Show Cause, which the Court struck; she then filed a Motion for Leave to Intervene, a Motion for Declaratory Ruling and Damages Related to Defendant's Procedural Due Process Violations of the Supplemental Relief Order, and an Intervenor's Amended Petition for Miscellaneous Relief. The Court denied her motion to intervene and her petition for miscellaneous relief. *Shakman v. Democratic Org. of Cook Cnty.*, No. 69 C 2145, ECF No. 5231, at *9 (N.D. Ill. Oct. 16, 2017) (noting that the Court expressed no views regarding the OIIG findings, the arbitration award, the Court's prior denial of

the motion to vacate the award, or claims before other judges). The Court found that Ms. Lanahan "admits that she cannot show political discrimination." *Id.* at *5.

Ms. Lanahan also filed a complaint with the Employment Plan Officer ("EPO"). The EPO met with Ms. Lanahan and her attorney on November 19, 2015. The EPO issued her report on October 18, 2016; she recommended creating a salary schedule for Grade 24 positions that are not exempt.

In March 2016, while her arbitration was pending, Ms. Lanahan learned that her subordinates would be relocated to another facility and reorganized. Mr. Elwell stated in his declaration that he decided to reorganize and relocate Ms. Lanahan's employees and that "[t]he decision was made to move all employees involved in finance to a single location with the Chief Financial Officer to improve coordination and performance." Def. Elwell Decl. ¶ 7, SOF, Ex. 46, ECF No. 137-47.

Ms. Lanahan brought this lawsuit in December 2016 against the County Defendants and the OIIG Defendants. While this Court dismissed some of her claims, several of her claims survived the defendants' motions to dismiss. The Court held that Ms. Lanahan stated claims for gender-based pay discrimination, retaliation in violation of Title VII, and First Amendment retaliation; she also brought an indemnification claim against the County. *See Lanahan v. Cnty. of Cook*, No. 16 C 11723, 2018 WL 1784139, at *16 (N.D. Ill. Apr. 13, 2018). After discovery, the parties filed three motions for summary judgment: Ms. Lanahan's partial motion for summary judgment, the Cook County Defendants' motion for summary judgment, and the OIIG Defendants' motion for summary judgment. The Court addresses each motion in turn.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). At the summary judgment stage, the Court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmovant. *Vaughn v. Walthall*, 968 F.3d 814, 818 (7th Cir. 2020). Unless otherwise noted, the facts in this memorandum opinion are undisputed and come from the parties' Local Rule 56.1 statements and responses.

## I. Plaintiff's Partial Motion for Summary Judgment

Ms. Lanahan filed a motion for partial summary judgment against Cook County. She moves for summary judgment on her wage discrimination claims under the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d)(1), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Her wage discrimination claims arise out of pay discrepancies between her compensation and that of two male colleagues: Robert Vais, another Director of Financial Control IV at Grade 24, and Chris Soriano, a Director of Financial Control III at Grade 23.

### A. Statute of Limitations

Before addressing Ms. Lanahan's arguments for partial summary judgment, the Court first turns to the defendants' affirmative defense that relief under either statute is time barred. Ms. Lanahan learned of the disparities in pay with Mr. Soriano in 2013 and with Mr. Vais on October 22, 2014. The County argues that, as a result, the EPA claims are barred by that statute's two-year statute of limitations. 29 U.S.C. § 255(a). Under Title VII, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discrimination. 42 U.S.C. § 2000e–5(e)(1). The County contends that the alleged acts of pay discrimination are also well outside of the charge period.

Ms. Lanahan responds by arguing that her Title VII claims are timely under the Lilly Ledbetter Fair Pay Act of 2009 ("Ledbetter Act"), Pub. L. No. 111-2, § 3, 123 Stat. 5 (codified at 42 U.S.C. § 2000e–5(e)(3)). The Ledbetter Act codified the paycheck accrual rule, meaning that "an unlawful employment practice occurs, with respect to discrimination in compensation . . . each

time wages, benefits, or other compensation is paid, resulting in whole or in part from [a discriminatory] decision or other practice." 42 U.S.C. § 2000e–5(e)(3)(A). In other words, regardless of whether an earlier discriminatory pay discrepancy began before the statute of limitations or charge period, "a new cause of action for pay discrimination arose every time a plaintiff received a paycheck." *Groesch v. City of Springfield*, 635 F.3d 1020, 1027 (7th Cir. 2011).[5] The Ledbetter Act amended Title VII, but the Seventh Circuit has held that the paycheck accrual rule also applies to EPA claims. *Kellogg v. Ball State Univ.*, 984 F.3d 525, 530 (7th Cir. 2021) (noting that the Ledbetter Act "legislatively reversed the Supreme Court's decision eschewing the paycheck accrual rule"). In its reply in support of its motion for summary judgment, the County seems to concede that Ms. Lanahan's claims would be timely under the Ledbetter Act. Since the Ledbetter Act applies to both Title VII and EPA claims, Ms. Lanahan's claims are not time-barred.[6] On, then, to the merits.

**B.     Equal Pay Act**

To prove her claim under the EPA, Ms. Lanahan must show "that: '(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions.'" *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008) (quoting *Stopka v. All. of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998)); *King v. Acosta Sales & Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012)

---

[5] Mr. Vais retired at the end of 2015. While his retirement may be beyond the 300-day charge period for Ms. Lanahan's claim under Title VII, the County continued to pay her at the same rate after Mr. Vais' retirement. She can, therefore, rely on those later paychecks that were within the charge period.

[6] Although Ms. Lanahan did not specifically argue that the Ledbetter Act applies to the EPA, this Court "is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (reversing on other grounds).

("An employee's only burden under the Equal Pay Act is to show a difference in pay for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions[.]'") (quoting 29 U.S.C. § 206(d)(1)). Under the EPA, the plaintiff does not have to prove that sex discrimination caused the pay discrepancy. Instead, the argument that a "factor other than sex" caused the pay discrepancy is an affirmative defense. 29 U.S.C. § 206(d)(1); *King*, 678 F.3d at 474.

Ms. Lanahan cannot prove as a matter of law that the County violated the EPA by paying Mr. Vais and Mr. Soriano higher salaries. She did not prove—or even attempt to prove—that either male employee engaged in equal work under substantially similar working conditions. The Seventh Circuit has held that "[t]he proper domain of the Equal Pay Act consists of standardized jobs in which a man is paid significantly more than a woman . . . and there are no skill differences." *Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 771-72 (7th Cir. 2007). To show that they did equal work, "[t]he plaintiff would have to show that the jobs compared are substantially equal, based upon actual job performance and content—not job titles, classifications or descriptions." *Markel v. Bd. of Regents of Univ. of Wis. Sys.*, 276 F.3d 906, 913 (7th Cir. 2002) (internal quotation marks omitted). Courts ask "'whether the jobs to be compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is identical.'" *Cullen v. Ind. Univ. Bd. of Trs.*, 338 F.3d 693, 698 (7th Cir. 2003) (quoting *Fallon v. Ill.*, 882 F.2d 1206, 1209 (7th Cir. 1989)). If the plaintiff establishes the common core, "the court must ask whether any additional tasks make the jobs 'substantially different.'" *Id.* (quoting *Fallon*, 882 F.2d at 1209). As an example of equal work, the Seventh Circuit provided the hypothetical of two music teachers with the same qualifications teaching similarly sized classes of the same grade at different—but comparable—public schools in the same public school district. *Sims-Fingers*, 493 F.3d at 772.

10

First, as the County argues, Ms. Lanahan and Mr. Vais had significantly different positions, and a reasonable jury could conclude that they did not engage in equal work. Ms. Lanahan argues that "[n]obody seems to know what Vais did to justify his expense to taxpayers in any of his occupations over a 30 year career in local government." Pl.'s Resp. to Cnty. Defs. 3, ECF No. 143. At her deposition, however, Ms. Lanahan explained Mr. Vais' job; she testified that he worked at the County hospital and prepared Medicare and Medicaid cost reports. Pl.'s Dep. 162:20-24– 163:1-10. Ms. Lanahan does not contest that Mr. Vais was the head of reimbursement for all of CCHHS. Nor does she dispute that Mr. Vais' job was to ensure that CCHHS received hundreds of millions of dollars in reimbursements. Ms. Lanahan also testified that her job was different. *Id.* at 163:5-6. She worked for a subset of CCHHS, the Department of Public Health. She managed grants for the Department, provided general accounting and coordinated purchasing for 32 business units, and oversaw the Department's finances and budget. In their joint statement of material facts, the parties agree that "Vais had the same title . . . as Plaintiff but his job was different." SOF ¶ 33, ECF No. 137.

Even if that admission in the Statement of Facts does not decide the issue, Ms. Lanahan's argument that she and Mr. Vais completed equal work misses the mark. To argue that their jobs constituted equal work that required substantially equal skill, effort, and responsibilities, she quotes the definition of the Career Service from the Cook County Personnel Rules:

> A uniform system of recruitment, selection, promotion, discipline, and compensation encompassing all positions of employment that must be filled competitively pursuant to the Human Resources Ordinance and these Rules and that are under the jurisdiction of the President of the Cook County Board of Commissioners, except those exempted hereunder.

Pl.'s Reply in Supp. 2, ECF No. 146 (emphasis omitted). The general personnel rules are irrelevant to whether the actual positions were equal. Instead, this Court must look to the actual positions of

Ms. Lanahan and Mr. Vais; Ms. Lanahan concedes that they are different positions involving different responsibilities.

Rather than adducing evidence that she and Mr. Vais had comparable duties and responsibilities, Ms. Lanahan argues that because Mr. Vais' personnel file did not include a job description or justifications for his salary increases, the Court should draw an adverse inference that they did equal work. She contends that the County had a duty to maintain personnel records for Mr. Vais and that its failure to do so constitutes spoliation. "A spoliation sanction is proper only when a party has a duty to preserve evidence because he knew, or should have known, that litigation was imminent." *Fitzpatrick v. Nys*, 861 F. App'x 108, 110 (7th Cir. 2021) (citing *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008)). The party claiming spoliation must also make a showing of bad faith. *Id.* Ms. Lanahan has established none of these requirements. Ms. Lanahan provides no evidence that the defendants destroyed or failed to preserve relevant documents. She also fails to present evidence of when the alleged destruction took place or that the defendants had a duty to preserve Mr. Vais' personnel records at that unknown time. She also failed to raise these issues in discovery. *Welch v. Eli Lilly & Co.*, No. 1:10-cv-01705-LJM-TAB, 2013 WL 4413323, at *13 (S.D. Ind. Aug. 15, 2013) (first request for spoliation remedy at the summary judgment stage untimely).

The absence of a job description in Mr. Vais' file, without any evidence of spoliation, does not further Ms. Lanahan's claims. The Court does not find that an adverse inference could be warranted under the circumstances; and, given Ms. Lanahan's admission that Mr. Vais had different job duties, the absence of a formal job description does not weigh in her favor. As the County notes, Ms. Lanahan does not point to any evidence to support an argument that Mr. Vais did equal work under substantially similar conditions. Thus, Ms. Lanahan is not entitled to

summary judgment on her EPA claim based on the pay discrepancies between herself and Mr. Vais.

Second, Ms. Lanahan is not entitled to summary judgment on her EPA claim based on her pay vis-à-vis that of Mr. Soriano.[7] The County contends that the EPA should not apply because Ms. Lanahan was Mr. Soriano's supervisor and Mr. Soriano could not have had equal work as her subordinate. The Seventh Circuit has rejected that argument. *Riordan v. Kempiners*, 831 F.2d 690, 699 (7th Cir. 1987) ("[W]here a female supervisor is paid less than the workers she supervises and the only difference in work between the supervisor and the supervised is the supervisory responsibilities of the former, the Act applies."). But, again, beyond pointing to the definition of "Career Service," Ms. Lanahan does not argue that Mr. Soriano's job duties were similar to her own, and she does not argue that the only difference in their work was her supervisory role. In fact, she does not explain ***any*** of Mr. Soriano's job duties or describe his role at all. As a result, Ms. Lanahan has failed to prove the threshold issue of whether she and Mr. Soriano engaged in equal work. A reasonable jury could find that Ms. Lanahan and Mr. Soriano did not engage in equal work.[8]

---

[7] Although it is undisputed that the County paid Mr. Soriano more than Ms. Lanahan, the parties dispute Mr. Soriano's exact salary. To establish Mr. Soriano's salary, Ms. Lanahan directs the Court to the Cook County Annual Appropriation Bill for the Fiscal Year 2015, Volume 2. Pl.'s SOF ¶ 9, ECF No. 139-1. The County disputes the admissibility of the evidence and argues that Ms. Lanahan did not show that the link represents the actual salary and title for Mr. Soriano. The document does not identify Mr. Soriano by name. The Court finds that Mr. Soriano's exact salary is a disputed fact, but it is not material for the purposes of summary judgment.

[8] The County raises the affirmative defense that it had other reasons for paying Mr. Soriano more, namely the Grade 23 pay scale. Mr. Soriano's salary increased over time due to set salary increases without any discretion on the part of the County. Ms. Lanahan's salary, by contrast, ***was*** discretionary and not subject to a pay scale or fixed salary increases. This is unconvincing, as it begs the question of why the County exercised its discretion with respect to Ms. Lanahan's salary by paying comparable male employees more than her.

### C. Title VII

Ms. Lanahan's compensation claim fares no better when considered in the context of Title VII. The principal difference between the analysis under the EPA and Title VII is that, under Title VII, the plaintiff must prove discriminatory intent rather than treating the lack of intent as an affirmative defense. To prevail on a Title VII claim, the plaintiff has to prove her sex caused the adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("[The] legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.").

As with her EPA claim, Ms. Lanahan attempts to prove her claim under Title VII by comparing her treatment to that of Mr. Vais and Mr. Soriano. To prove her claim through comparators, Ms. Lanahan must show that "similarly situated individuals received better treatment." *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629 (7th Cir. 2018). Courts look to a variety of factors such as whether "the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them." *Id.* (quoting *Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017)). "Similarly situated employees must be directly comparable to the plaintiff in all material respects, yet this is a flexible inquiry with no magic formula. Whether a comparator is similarly situated is usually a question for the fact-finder, and summary judgment is appropriate only when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Id.* (cleaned up).

The County argues that Ms. Lanahan is not entitled to summary judgment because a reasonable jury could conclude that Mr. Vais and Mr. Soriano were not similarly situated to Ms. Lanahan for the same reasons that they did not engage in equal work under the EPA. Mr. Vais

worked for CCHHS at large and was responsible for an area—Medicare and Medicaid reimbursement—that involved a significantly higher aggregate value of transactions than Ms. Lanahan was responsible for in her position at the Department of Public Health supervising accounting and grants. He and Ms. Lanahan never worked for the same department, and Ms. Lanahan admits that they had different jobs. Mr. Soriano worked in the Department with Ms. Lanahan, and she supervised him. She did not provide any evidence as to his job description, exact duties, or her role as his supervisor; a reasonable jury could conclude that Ms. Lanahan has not provided enough evidence that Mr. Soriano was similarly situated.

In sum, the Court denies Ms. Lanahan's partial motion for summary judgment on her pay discrimination claims under both the EPA and Title VII.

## II.     Cook County Defendants' Motion for Summary Judgment

The County Defendants move for summary judgment in their favor on Ms. Lanahan's remaining claims against them. Denial of Ms. Lanahan's motion for summary judgment does not mean, of course, that the Court must grant the defendants' cross motion; summary judgment for the defendants is only warranted when a reasonable jury could not find for the nonmovant and the movant is entitled to judgment as a matter of law. And now, the Court addresses the pay discrimination claim by viewing the record in the most favorable light to Ms. Lanahan. The remaining claims against the County Defendants are the EPA claims against the County, a Title VII sex discrimination claim against the County, a Title VII retaliation claim against the County, a First Amendment retaliation claim under 42 U.S.C. § 1983 against the individual County Defendants, and an indemnification claim against the County. The Court addresses each claim in turn.

A. **Equal Pay Act**

Turning first to the EPA claim, the Court finds that Ms. Lanahan failed to present evidence that her work and that of Mr. Vais and Mr. Soriano were substantially equal as required under the EPA. As discussed above, in the case of Mr. Vais, Ms. Lanahan offers no evidence about his position to show that she and Mr. Vais engaged in equal work. Again, the definition of Career Service as a uniform system is not relevant evidence. The Court cannot rely on similarities between titles but instead must address the content of their jobs to determine whether their work is equal. Ms. Lanahan, moreover, admits that their positions were different. The County's evidence regarding their different positions leads this Court to conclude that no reasonable jury could find for Ms. Lanahan on this claim. As such, the Court does not need to address the parties' arguments regarding the County's affirmative defenses.

As also noted in the discussion of Ms. Lanahan's motion for summary judgment, Ms. Lanahan failed to proffer any evidence that she and Mr. Soriano engaged in equal work. She did note that she was his supervisor, but she does not explain what his job was or how she interacted with him. Without any information about what supervising Mr. Soriano entailed or his job, Ms. Lanahan's title as his supervisor alone falls far below the evidence that would be necessary for a reasonable jury to find that the two engaged in equal work. To survive summary judgment, Ms. Lanahan needs to provide evidence that would allow a reasonable jury to infer that Mr. Soriano and Ms. Lanahan engaged in similar work, apart from her supervisory role. She fails, however, to identify any evidence about Mr. Soriano's job duties beyond the mere fact that he was Ms. Lanahan's subordinate. That fact alone cannot sustain a jury verdict in her favor that Mr. Soriano engaged in substantially equal work.

Ms. Lanahan having failed to adduce evidence sufficient evidence to support a jury verdict on her EPA claim, the defendants' motion for summary judgment dismissing Ms. Lanahan's EPA claim is granted.

**B.    Title VII Pay Discrimination**

Again, the County argues that Mr. Vais and Mr. Soriano are not similarly situated employees. The Court agrees with the County that Ms. Lanahan, Mr. Vais, and Mr. Soriano are not similarly situated. Ms. Lanahan concedes that Mr. Vais had a different job; and she presents no evidence regarding Mr. Soriano's job, duties, or her role as his supervisor. A reasonable jury could not find that these proffered comparators were similarly situated. The County is, therefore, entitled to summary judgment on Ms. Lanahan's Title VII claim.

**C.    Title VII Retaliation**

Title VII prohibits retaliation against employees for engaging in statutorily protected activities. 42 U.S.C. § 2000e–3(a). "[The plaintiff] must produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) [her employer] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). Ms. Lanahan argues that a reasonable jury could find that she proved the elements of her retaliation claim because she complained about the pay discrepancy, and, as a result, the County reorganized and relocated her employees. The County does not contest that Ms. Lanahan engaged in a statutorily protected activity, but it does argue that Ms. Lanahan fails to present evidence sufficient to prove the second and third elements.

The County argues that Ms. Lanahan cannot prove that the County took a materially adverse action against her. To be materially adverse, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge

of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). The alleged adverse action at issue is the relocation and reorganization of Ms. Lanahan's direct reports (apparently, without her input or knowledge). Ms. Lanahan does not present any evidence that would show that the reorganization and relocation of the employees she supervised would have deterred a reasonable person from making or supporting a charge of sex discrimination. Indeed, she failed to address the County Defendants' arguments that reorganizing and relocating her team were not adverse actions.

The County argues that Ms. Lanahan has not shown any negative consequences from the reorganization and relocation. The County also contends that Ms. Lanahan's pursuit of her retaliation claim demonstrates that the reorganization and relocation were not materially adverse (in other words, arguing that the retaliation does not rise to the level of an adverse action because it failed to deter Ms. Lanahan from continuing to pursue her claims). That sets up a "Catch-22" in which one must be deterred from protesting wrongful conduct in order to have a retaliation claim based on that conduct. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). That's why whether an employer's act "could well dissuade a reasonable worker from making or supporting a charge" is an objective, rather than subjective, standard. "The standard is objective, so a specific plaintiff's persistence does not undermine his claim." *Id.*

The defendants are correct, however, that Ms. Lanahan failed to provide any evidence that the reorganization and relocation of the employees she supervised were materially adverse actions. She does not present any evidence about the details of the reorganization and relocation, let alone any evidence that the reorganization and relocation resulted in any negative consequences for her or that a reasonable person would experience negative consequences; she does not even present any deposition testimony or otherwise include her own account of the alleged adverse action.

Further, no reasonable jury could find for Ms. Lanahan on causation. As to that element, Ms. Lanahan needs to show that CCHHS would not have relocated and reorganized her team but for her *sex-discrimination* complaints. Both the County and Ms. Lanahan are slightly off the mark with their arguments; they both discuss causation in terms of temporal proximity to any of Ms. Lanahan's compensation-related complaints. Under Title VII, however, the protected activity must be related to the rights protected by Title VII. In this case, the relevant protected activities must relate to her sex-discrimination claims, and any temporal arguments must be based on when she complained of sex discrimination. Both parties agree that Ms. Lanahan made complaints regarding sex-based pay disparities between 2008 and 2014. Ms. Lanahan attempts to argue that the relocation and reorganization, which occurred in March 2016, are causally related to her complaints because of temporal proximity to the OIIG report and arbitration. But Ms. Lanahan never raised sex-discrimination claims or complaints before the OIIG or the arbitrator—instead, those proceedings addressed her compensation in terms of political rather than sex-based discrimination. She does not provide evidence of other sex-related complaints or other protected activities under Title VII.

Given that Ms. Lanahan made her sex-based complaints more than a year before the decisions regarding her team, the Court agrees with the County that a reasonable jury could not find that Ms. Lanahan's complaints based on sex discrimination were a but-for cause of the relocation and reorganization of her team. Therefore, the Court grants the County's motion for summary judgment as to Ms. Lanahan's Title VII retaliation claim.

### D.  First Amendment Retaliation

Ms. Lanahan brings section 1983 First Amendment retaliation claims against both the individual County Defendants and the OIIG Defendants. In this section, the Court addresses only

the claims against the County Defendants; the Court discusses the claims against the OIIG Defendants below in section III.

Ms. Lanahan included speech regarding gender discrimination and political discrimination as the bases of her claims. The County Defendants argue that they are entitled to summary judgment based on her speech about sex discrimination because Ms. Lanahan failed to respond to any of their arguments regarding that speech. In her response to the County Defendants' motion, Ms. Lanahan addressed only the County Defendant's arguments based on her speech alleging political discrimination before the OIIG. Ms. Lanahan "re-adopts" her response to the OIIG Defendants' motion and fails entirely to argue that her complaints regarding gender discrimination could support a claim of First Amendment discrimination. Pl.'s Resp. to Cnty. Defs. 9. Given her failure to respond to the County Defendants' arguments, the Court agrees with the defendants that Ms. Lanahan's speech about sex discrimination cannot support a retaliation claim. *Hartford Underwriters Ins. Co. v. Worldwide Transp. Shipping Co.*, 313 F. Supp. 3d 919, 925 (N.D. Ill. 2018) ("When a party does not respond to an argument it is deemed waived[.]"). The Court therefore only addresses whether Ms. Lanahan carried her burden with regards to her SRO complaint about political discrimination.

First Amendment retaliation claims require the plaintiff to prove three elements: (1) she engaged in constitutionally protected speech; (2) she experienced a deprivation likely to dissuade a reasonable person from exercising her right to free speech; and (3) her speech was, at least in part, a motivation for the retaliatory action. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020); *Douglas*, 964 F.3d at 646. The defendants argue that no reasonable jury could find for Ms. Lanahan on any of the three elements based on her complaint to the OIIG. The Court agrees because she conceded the first two elements and adduced no evidence to support the third.

As a public employee, Ms. Lanahan's speech is protected if she can show that "(1) [she] made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [her] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Kristofek v. Vill. of Orland Hills*, 832 F.3d 785, 792 (7th Cir. 2016) (quoting *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013)); *Kubiak v. City of Chi.*, 810 F.3d 476, 481 (7th Cir. 2016). The defendants make two different arguments that Ms. Lanahan's speech was not constitutionally protected: they contend that (1) she spoke as a government employee rather than as a private citizen and (2) her speech was not on a matter of public concern.

Ms. Lanahan did not respond to the defendants' second argument that her speech was not on a matter of public concern and did not present any evidence that her speech regarded a matter of public concern. In its prior ruling on the defendants' motion to dismiss, the Court concluded that—based on the allegations of the complaint—Ms. Lanahan's complaint to the OIIG plausibly constituted speech on a matter of public concern. At the summary judgment stage, however, Ms. Lanahan has not made any arguments or directed the Court to specific evidence that her speech addressed a matter of public concern. By failing to address the defendants' arguments, she concedes that her speech did not address a matter of public concern. *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). Her statements to the OIIG Defendants, therefore, are not protected speech.

Even if a reasonable jury could find that her speech was on a matter of public concern, the defendants would still be entitled to summary judgment because Ms. Lanahan failed to present any evidence or make any arguments that she suffered a deprivation. To survive summary judgment,

Ms. Lanahan must provide evidence that would permit a reasonable jury to find that "the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas*, 964 F.3d at 646 (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). "[T]he law merely requires some negative consequence (deprivation) with a chilling effect on First Amendment activity." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021).

The deprivation at issue consists of the County, at Mr. Elwell's direction, relocating and reorganizing Ms. Lanahan's direct reports. Ms. Lanahan did not present any evidence that would show that the reorganization and relocation of the employees she supervised would have deterred a reasonable person from engaging in protected speech. She failed to address the County Defendants' arguments that she did not suffer an actual deprivation that would have dissuaded a reasonable person of ordinary firmness from engaging in protected expression. The County Defendants argue that Ms. Lanahan has not shown any negative consequences from the reorganization and relocation. She does not present any evidence about the details of the reorganization and relocation, let alone any evidence that the reorganization and relocation resulted in any negative consequences for her; she does not even present any deposition testimony or otherwise include her own account of the alleged deprivation.

The County Defendants also contend that Ms. Lanahan's pursuit of her claims demonstrates that she did not suffer a deprivation likely to deter protected speech. This Court cannot consider Ms. Lanahan's pursuit of her claims; again, "[t]he standard is objective, so a specific plaintiff's persistence does not undermine his claim." *Douglas*, 964 F.3d at 646. While this second argument is not availing, the defendants are correct that no reasonable jury could find

that Ms. Lanahan suffered a deprivation because she did not provide any evidence that the reorganization and relocation of the employees she supervised caused such a deprivation.

The County Defendants' motion for summary judgment on Ms. Lanahan's First Amendment claim is granted.

### III.    OIIG Defendants' Motion for Summary Judgment[9]

Ms. Lanahan's only remaining claim against the OIIG Defendants is also a First Amendment retaliation claim. She alleges different deprivations in her claim against the OIIG Defendants; she alleges that the OIIG Defendants wrongly dismissed her wage complaint based on Mr. Vais, concealed evidence findings, and failed to properly investigate her claims.

The OIIG Defendants raise the doctrine of qualified immunity as an affirmative defense. "Qualified immunity 'protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Courts ask two questions at the summary judgment stage: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether the constitutional right was clearly established at that time." *Id.* (cleaned up). District courts may use their discretion to determine which question to address first, and a negative answer to either question entitles the defendant to qualified immunity. *Id.* (citing *Pearson*, 555 U.S. at 236); *Torry v. City of Chi.*, 932 F.3d 579, 586-87 (7th Cir. 2019) (same). As the Court finds that the facts taken in the light most favorable to Ms.

---

[9] In her response to the OIIG Defendants' motion, Ms. Lanahan makes arguments that the OIIG Defendants are liable in their official capacities as officials with final policymaking authority. The Court already rejected these arguments and declines to revisit its prior holding. *Lanahan*, 2018 WL 1784139, at *12-14.

Lanahan do not show that the OIIG Defendants violated a constitutional right, the Court does not address the second question of whether the constitutional right was clearly established at the time. *See Torry*, 932 F.3d at 586-87.

Ms. Lanahan fails to address the OIIG Defendants' arguments that her speech was not on a matter of public concern. The Court's analysis of whether Ms. Lanahan engaged in constitutionally protected speech remains the same. As she does not present any evidence or argue that her speech addressed a matter of public concern, her speech was not protected speech.

Even if a reasonable jury could conclude that Ms. Lanahan's speech addressed a matter of public concern, she did not provide sufficient evidence of her alleged deprivations. The only deprivation for which she provides evidence is the dismissal of her wage complaint; the parties agree that Ms. Lanahan learned that Mr. Vais earned a higher salary in October 2014, and she filed her complaint well within 120 days on December 16, 2014. Wrongly dismissing claims could well dissuade a reasonable person from speaking. The problem for Ms. Lanahan is that she provides no evidence of causation regarding that deprivation. She fails to show that she **told** any of the OIIG Defendants that she learned about the pay discrepancy with Mr. Vais in 2014 rather than in 2008, which would have been well outside of the 120-day period. Ms. Cohen testified in her deposition that Ms. Lanahan told her she discovered the pay discrepancies in 2008, and Ms. Lanahan's SRO complaint does not state when she learned of the pay discrepancies. She emphasizes that Mr. Vais received much higher pay "since at least 2008." SRO Compl. Aff. ¶ 8. She also states that she made multiple complaints, but she does not distinguish between the earlier complaints regarding Mr. Soriano's pay or other complaints and complaints regarding Mr. Vais' pay. None of the emails attached to her SRO complaint reveal when she learned of Mr. Vais' higher salary. In Ms. Lanahan's written responses to Ms. Cohen's questions during the OIIG's investigation, Ms.

Lanahan says that she "ha[s] been trying to have my salary changed for since [sic] September 2008." Pl.'s Resp. to Cohen's Written Questions 3, SOF, Ex. 11, ECF No. 137-12. She does not provide a different date for concerns regarding Mr. Vais despite Ms. Cohen asking specific questions about Mr. Vais. Thus, no reasonable jury could conclude that the OIIG Defendants found her pay discrepancy claims to be time barred in retaliation for her speech because all the evidence indicates that they reasonably believed Ms. Lanahan's compensation claims were indeed time barred.

Beyond her own suspicions, Ms. Lanahan provides no evidence of the remaining alleged deprivations. She does not provide any evidence that she was entitled to the allegedly concealed payroll records, much less that the OIIG Defendants concealed them at all. Indeed, she admits that she received the records in the course of the arbitration. Ms. Lanahan also seems to argue that the OIIG changed or ratified changes to her employment status, but she presents no evidence of this; the OIIG report clearly found that the severance policy did not apply to her or alter the terms of her employment. Ms. Lanahan concedes that she does not know whether the OIIG used different standards with regards to her case.

Ms. Lanahan attempts to create a factual dispute over whether Ms. Cohen and Mr. Blanchard knew or believed that her claims were meritorious, but she presents no evidence supporting that proposition. Ms. Cohen testified that she never determined what caused the pay discrepancy between Ms. Lanahan and Mr. Vais. Cohen Dep. 84:6-8, SOF, Ex. 9, ECF No. 137-10. Ms. Lanahan argues that Ms. Cohen admitted that there was no reason for the disparity. That mischaracterizes Ms. Cohen's testimony. Rather, she testified that she never discovered the cause because other employees made the salary decisions years before; Ms. Cohen was not sure that the people who made the salary decisions in 2008 and 2009 still worked for CCHHS. *Id.* at 84:10-24.

Ms. Cohen also noted that "Miss Lanahan had a different position than Mr. Vais." *Id.* at 84:15-16. Although Ms. Lanahan cites to a redline version of the OIIG's report that removes the line "Additionally, the position for the other Director of Financial Controls IV was also added to the Policy," that does not mean the OIIG Defendants knew that she "was singled out" or indicate the investigators' views on the merits of her claims. Pl.'s Resp. to OIIG Defs. 8, ECF No. 142. That line would have come after the OIIG's conclusion that the new severance policy did not apply to Ms. Lanahan at all and never changed her position or employment status. At most, the change indicates that the OIIG Defendants knew the amendment would not apply to either Ms. Lanahan or Mr. Vais.

Having concluded that on this record no reasonable jury could find that the OIIG Defendants retaliated against her for complaining about her compensation, the Court need not address the OIIG Defendants' arguments that the rights at issue were not clearly established. *Torry*, 932 F.3d at 586-87. The OIIG Defendants are entitled to summary judgment regardless.

\*     \*     \*

For the foregoing reasons, Ms. Lanahan's motion for partial summary judgment [131] is denied, the County Defendants' motion for summary judgment [133] is granted, and the OIIG Defendants' motion for summary judgment [136] is granted. Judgment will be entered for the defendants.

Dated: July 29, 2022

John J. Tharp, Jr.
United States District Judge